F. Christopher Austin, Esq.
Nevada Bar No. 6559
LEX TECNICA, LTD
10161 Park Run Drive
Suite 7150
Las Vegas, Nevada 89145
Telephone: 702-518-5535
Email: caustin@swlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ADHERENCE d/b/a of MORISKY MEDICATION ADHERENCE RESEARCH LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> CVS PHARMACY, INC., a Rhode Island corporation; and ASEMBIA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: 2:24-cv-01590 <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff Adherence d/b/a of Morisky Medication Adherence Research, LLC ("Plaintiff" or "Adherence"), by and through its counsel, the law firm of Lex Tecnica, Ltd., hereby files its Opposition to Defendants CVS Pharmacy, Inc. ("CVS"), and Asembia, LLC's ("Asembia") Partial Motion to Dismiss Plaintiff's First Amended Complaint (ECF 12).

## MEMORANDUM OF POINTS AND AUTHORITIES

While Adherence agrees to the dismissal of its intentional interference claim and related Nevada deceptive trade practices claim, given defendant CVS's revelation that it was privileged to interfere with Adherence's prospective contract with Aetna, since Aetna is a wholly owned CVS subsidiary, Plaintiff hereby opposes Defendants' Motion to dismiss Plaintiff's Claim for Copyright

Infringement. As set forth herein, Defendants' arguments are not well founded in copyright law or the facts of this case, and the Motion should be dismissed.

As set forth herein, Plaintiff's Morisky Medication Adherence Scales ("MMAS") are subjective assessments that are the product of decades of peer-reviewed studies in which the creatively crafted directives, information, statements and assessment questions set forth in a specifically chosen order provide information and assurances to the patient necessary to illicit from the patient honest responses that when tabulated by a simple but creative algorithm authored by Plaintiff's founder, Dr. Donald Morisky, give the provider a valid assessment of the patient's future likelihood of complying with his or her medication protocol.[1] The purpose of these two copyright protected MMAS assessments, the MMAS-4 and MMAS-8, is to help the provider calculate the likelihood of whether the patient will timely take his or her medications as prescribed to sustain health and life. As such, these assessments, the MMAS-4 and the MMAS-8, which are designed both to overcome a patients natural inhibitions against reporting non-adherence and to help the provider predict the likely level of future behavior of the patient, an ultimate conclusion that is neither sought from or given by the client, are not mere uncreative blank forms seeking objective information such as one's name, address, or phone number. Rather, these assessments are creative expressions of information themselves and are used to generate an additional information regarding likely future behavior, and as such, they are presumptively protectable creative expressions entitled to full copyright protection.

**I.      RELEVANT FACTUAL BACKGROUND**

On August 28, 2024, Adherence filed this action against Defendants CVS and Asembia asserting claims for federal trademark and copyright infringement arising from Asembia's whole-cloth copying and publication of both the copyright registered MMAS-4© and the MMAS-8© in its Asembia-1 platform.[2] That Asembia-1 platform was then licensed to every CVS Specialty Pharmacy[3] nationwide where it was "used daily" for over 8 years.

---

[1] Elasy TA, Gaddy G. Measuring subjective outcomes: rethinking reliability and validity. J Gen Intern Med. 1998 Nov;13(11):757-61. doi: 10.1046/j.1525-1497.1998.00228.x. PMID: 9824522; PMCID: PMC1497034.

[2] Compl. at 1, filed Aug. 28, 2024.

[3] As well as likely some 20 other companies identified on Asembia's website.

- 2 -

1   As set forth in the Complaint, The MMAS was designed to be a short assessment, only 4 or 8 questions, so that it could be seamlessly given every time medications were being prescribed or refilled to patients with terminal diseases dependent on those medications. It was also designed to be easily and quickly calculated so the practitioner could immediately take action to help likely non-adherent patients.

Because medication adherence is such a life-threatening concern, Medicaid and Medicare will reimburse medical providers for giving medication adherence assessments to their patients and for interventions, including counseling, to help likely non-adherent patients take their life-saving medications.[4] These reimbursements would amount to tens of millions of dollars over the course of the 8 years that Asembia and CVS unlawfully used the MMAS with its 300,000 patients.

As set forth in the Complaint, Asembia unlawfully profited from the infringement by being able to claim their program had what has been identified in the industry as the "Gold Standard" for adherence assessments, the MMAS.[5] And CVS profited by being able to boast they provided their patients with the life-saving benefits of the renowned MMAS.

Defendants got away with their infringement of Dr. Morisky's assessment scales for over 8 years and were only caught when CVS pharmacist, Ali Mohempour, PharmD, reached out to Philip Morisky, Adherence's CEO. To Philip Morisky's surprise, Dr. Mohempour volunteered that he had access to the MMAS-4 and the MMAS-8 through CVS's subscription to the Asembia-1 software platform. Dr. Mohempour further thanked Dr. Morisky for authoring and developing the scales to help save lives. He noted that pharmacist at CVS were using the "MMAS-4 and MMAS-8 every single day via the Asembia-1 clinical platform." Philip Morisky then confirmed that CVS and Asembia had been using the MMAS-4 and MMAS-8 for at least the last 8 years.[6]

Now, after having chosen to go out and copy Dr. Morisky's MMAS scales and after

---

[4] *See* CPT Code 99490-99491 (Reimbursements for chronic care management patients).

[5] *See,* Moon SJ, Lee WY, Hwang JS, Hong YP, Morisky DE. Accuracy of a screening tool for medication adherence: A systematic review and meta-analysis of the Morisky Medication Adherence Scale-8. PLoS One. 2017 Nov 2;12(11):e0187139. doi: 10.1371/journal.pone.0187139; *see also,* Murali KM, Mullan J, Roodenrys S, Cheikh Hassan HI, Lonergan MA. Exploring the Agreement Between Self-Reported Medication Adherence [Morisky Medication Adherence Scales] and Pharmacy Refill-Based Measures in Patients with Kidney Disease. Patient Prefer Adherence. 2022 Dec 30;16:3465-3477. doi: 10.2147/PPA.S388060. PMID: 36605331; PMCID: PMC9809402.

[6] FAC (ECF 9, at 9-10)

- 3 -

proclaiming to the world that they have something of great and life-saving value, and after having used the copied the MMAS for their own profit and benefit, Defendants come to this Court by their Motion and incredulously demand that they should not be held accountable. By their Motion, Defendants essentially allege the MMAS isn't worth anything: "It's just an unprotectable form," and that they should be given a carte blanche right to steal, use and profit from without any consequences. As set forth herein, they are wrong morally, on the law, and on the facts.

**II.    ARGUMENT**

The MMAS is not a mere idea or unprotectable method. It is a carefully constructed assessment tool that utilizes a specific sequence of questions, designed with precise language to convey information in a manner to solicit reliable responses, and a unique scoring system to evaluate present and predictive patient adherence behavior. Each element of the MMAS, from the selection of behavioral dimensions to the nuanced phrasing of each question, reflects the author's creative choices and intellectual effort. As set forth in the complaint, and as Defendants well know, the MMAS are the product of hundreds of studies and decades of research, much of it going into the language, word choice, instructions, form, voice, order and compilation of these apparently "simple" short assessments, in which their conciseness is an essential feature of their proven success. And as such, they remain protected under United States copyright laws.

**A.    Copyright Law Governing "Blank Forms"**

A copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate."[7] The burden of proof rests with the defendant to rebut the presumption of validity, requiring the defendant "to produce evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."[8]

Defendants argue that the validity of the copyrighted MMAS-4 and MMAS-8 are rebutted because they are "blank forms" that are not subject to copyright protection.[9] As is the case for other works, the copyrightability of blank forms "is to be determined soley by reference to the presence

---

[7] 17 U.S.C. § 410(c); see also *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989).
[8] *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).
[9] Mot. at **.

- 4 -

or absence of a sufficient amount of expression."[10] As a general rule, therefore, "blank forms" which do not convey information are not copyrightable.[11] By way of example, the following have been found to be non-protectable "blank forms":[12]

- blank timecards,
- graph paper,
- blank account books,
- blank checks,
- scorecards,
- address books,
- report forms,
- order forms and the like, which are designed for recording information and do not in themselves convey information.

For the same reason "medical superbills" have been found to be a "blank forms" because they comprise blank boxes for patient information and checklists for the doctor to select from a preprinted standard set of service along with the related AMA code and associated fee.[13]

There are, however, notable exceptions to this general "blank form" rule. Forms with "labeled spaces for recording information" are not "inherently disqualified from copyrightability."[14]  Where the copyrighted work comprises forms intended to record specific information, it "may advance considerable originality in suggestions of specific items of information that are to be recorded, and in the arrangement of such items."[15] Thus, journaling books "intended to record the events of a baby's first year, or a record of a European trip or any one of a number of other subjects" are copyrightable even though they largely consist of blank spaces to be

---

[10] 1 William F. Patry, Copyright Law & Practice 332 (6th ed. 1994).

[11] *Bibbero Sys. v. Colwell Sys.*, 893 F.2d 1104, 1106 (9th Cir. 1990).

[12] 37 C.F.R. § 202.1 (Lexis Advance through the Dec. 5, 2024, issue of the Federal Register, with the exception of the amendments appearing at 89 FR 96790 and 89 FR 96830).

[13] *Bibbero Sys. v. Colwell Sys.,* 893 F.2d 1104, 1105 (9th Cir. 1990). "Until the superbill is filled out, it conveys no information about the patient, the patient's diagnosis, or the patient's treatment. Doctors do not look to [the] superbill in diagnosing or treating patients. The superbill is simply a blank form which gives doctors a convenient method for recording services performed."

[14] *Advanz Behav. Mgmt. Res., Inc. v. Miraflor*, 21 F.Supp.2d 1179, 1184 (C.D. Cal. 1998); *Baker v. Seldon,* 101 U.S. 99, 104 (1879).

[15] 3 Nimmer on Copyright § 2.18[c][1] (1997).

completed by someone other than the author.[16] This is because the arrangement, compilation, of the information to be filled, is in itself sufficiently minimally creative to warrant copyright protection. "As copyrightable compilations, the organizers' selection, coordination, and arrangement are protectable. The text of the instructions is also protectable."[17] When "at least some ingenuity involved in labeling, selection, and arrangement of the blank spaces, forms . . . are copyrightable subject matter."[18]

### B.   The Copyrighted Morisky Medication Adherence Scales are Not Blank Forms.

Neither the MMAS-4© nor the MMAS-8© are "blank forms" for which no copyright protection is available, because they not only record specific information, they convey information, including, ultimately, the assessment made by the practitioner's application of Dr. Morisky's algorithm to quantify on a scale the patient's prospective medication adherence. The text of the registration of the MMAS-4 first gives the following information.[19]

> You indicated that you are taking medication for your <HEALTH CONDITION>. Individuals have identified several issues regarding their medication-taking behavior and we are interested in your experiences. There is no right or wrong answer. Please answer each question based on your personal experience with your <HEALTH CONDITION> medication.

The MMAS-4 then asks the patient to check "one box" for "yes (0)" or "no (1)" as to the following questions set forth in the following specific order:[20]

1. Do you ever forget to take your (name of health condition) medicine?

2. Do you ever have problems remembering to take your (name of health condition) medication?

3. When you feel better, do you sometimes stop taking your (name of health condition) medicine?

4. Sometimes if you feel worse when you take your (name of health condition) medicine, do you stop taking it?

---

[16] *Advanz Behav. Mgmt. Res., Inc. v. Miraflor,* 21 F.Supp.2d 1179, 1184 (C.D. Cal. 1998).

[17] *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989).

[18] *Advanz*, 21 F.Supp. at 1191

[19] Mot. at Exh. A. (ECF 12-1).

[20] *Id.*

Pursuant to the scoring protocol for the MMAS-4 adherence is measured from "low adherence to high adherence (0 to 4)" based on the points given for non-adherence, which then are assigned by the MMAS-4 as authored by Dr. Morisky to a level of adherence.

Similarly, the registered MMAS-8 first gives the following information:[21]

> You indicated that you are taking medication for your <health condition[>]. Individuals have identified several issues regarding their medication-taking behavior and we are interested in your experiences. There is no right or wrong answer. Please answer each question based on your personal experience with your <health condition> medication.

The MMAS-8 asks the patient to check "one box" for "yes" or "no" as to the first 7 of the 8 questions set forth in the following specific order and then to circle the correct response to the final (8th) question.[22]

1. Do you sometimes forget to take your <health condition> pills?

2. People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your <health condition> medicine?

3. Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it?

4. When you travel or leave home, do your sometimes forget to bring along your <health condition> medication?

5. Did you take your <health condition> medicine yesterday?

6. When you fell like your <health condition> is under control, do you sometimes stop taking your medicine?

7. Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your <health condition> treatment plan?

8. How often do you have difficulty remembering to take all your medications? (**Please circle your response below**)

    Never/Rarely ……………………… 4

    Once in a while …………………… 3

    Sometimes ………………………… 2

    Usually …………………………….. 1

---

[21] Mot. at Exh. B (ECF 12-2).

[22] *Id.*

All the time ………………………… 0

Pursuant to the scoring protocol for the MMAS-8, a more refined assessment of adherence can be identified. In this assessment a higher score reflects higher adherence while a lower score reflects lower adherence.

Unlike works that are unprotectable "blank forms" because they lack the minimal creativity required—giving information—the MMAS-4 and MMAS-8 both commence with a paragraph that only provides information. This paragraph is critical to the success of the scales by minimizing the tendency of patients to exaggerate their compliance so as to look good or to be perceived as behaving well or in compliance with expected norms. By telling patients that others "have identified several issues regarding their medication-taking behavior" the paragraph puts the patient at ease, informs the patient that others are like him, and that his non-adherence is normal. It then encourages frankness by directly informing the patient "there is no right or wrong answer". The subtext tells them you will not be judged or condemned for admitting non-adherence. Dr. Morisky had a near infinite number of ways to introduce his scales. His selection of this introduction is, therefore, prima facie creative and entitled to copyright protection.

The same is true of each of the questions. Each of the questions suggest an excuse for non-adherence, providing the patient with information:

- "forget to take"
- "difficulty remembering"
- "feel better"
- "feel [felt] worse"
- "forget to bring it [medication] along"
- "<health condition> is under control"
- "real inconvenience"
- "feel hassled"

This was intentional and to the exclusion of hosts of other options, suggestions or questions that Dr. Morisky chose not to include. These suggestions provide the patient with information. It informs the patient of common reasons others have for non-adherence. The questions also provide subtextual information. They inform the patient that they are like others that they are normal, and that it is okay to be honest about their reasons for non-adherence, etc. As such, these questions are not "blank forms." As set forth above; to be a "blank form" the form cannot provide any information. Rather the ONLY source of information is that provided by the person completing the form. That obviously is not the case with the registered MMAS-4© and registered MMAS-8©, because every question not only seeks information, but provides its, precluding as a matter of law, the finding that these assessments are non-protectable "blank forms."

That these assessments are not "blank forms" is further evidenced by the fact that there are numerous alternative ways to convey the information or to express them. A blank form is not protectable precisely because there are very few ways in which one could ask another to "enter their name, address, or phone number" for example. The "blank form" is not protectable because it is incapable of having the minimal creativity required.[23] That is not the case here with the MMAS-4 or the MMAS-8. In addition to the numerous alternative suggestions that could have been conveyed by these questions, the structure and wording of the questions themselves are also creative. For example, each question is designed, intentionally, to elicit a "yes" response for a "non-adherent" answer. This was by design because studies have shown that human beings are more resistant to answering "no" particularly to their medical provider.[24] So, rather than simply ask "do you take your medications as directed by your doctor?" which would call for a "no"

---

[23] See, 37 C.F.R. § 202.1(c), (a work is considered a blank form only if it consists of "common property" elements, such as standard fields for data entry that lack expressive content). The MMAS does not fit this definition. Unlike a simple form with empty fields, the MMAS contains originally authored language, structured prompts, and a unique interpretive framework that require respondents to engage with a carefully designed adherence assessment.

[24] Tan X, Patel I, Chang J, et al. Review of the four item Morisky Medication Adherence Scale (MMAS-4) and eight item Morisky Medication Adherence Scale (MMAS-8). Inov Pharm. 2014;5(3): Article 165. http://pubs.lib.umn.edu/innovations/vol5/iss3/5 ("The original Morisky scale was quite innovative at that time for its capture of the fundamental reasons of medication underuse or omission and its reversing the wording of the questions to utilize the "yes-saying" bias to obtain disclosures of non-adherence.") See also, Bohns, V. K. (2016). (Mis)Understanding Our Influence Over Others: A Review of the Underestimation-of-Compliance Effect. Current Directions in Psychological Science, 25(2), 119-123.

response for non-adherence, the question is phrased in the negative and with an encouraging suggestion—"do you sometimes forget to take your medicine?"—in order to give the patient an opportunity to more easily respond "yes" to essentially the same question. This is creative, and it certainly rises to the minimal level of creativity required for copyright protection.

Moreover, it is not just the information suggested directly and via subtext, the word order, or the structure to elicit a "yes" for a negative response that sets these scale questions apart from mere "blank forms," it is also their compilation. The questions are provided in an intentional and chosen order. This order is important and creative. The first questions function essentially, as the "camel's nose in the tent." It suggest non-adherence is likely normal and merely asks—in essence— "are you normal too"; do you also "sometimes forget." After the patient answers these first questions, the patient can then be more comfortable giving more details, and ultimately, grading themselves from 0-4 on "how often" they are adherent. Even were the questions themselves not protectable—and they are—under the law, this compilation (the ordering of the questions) is, such that the MMAS-4 and MMAS-8 would still be protectable as exceptions to the "blank form" rule.

### C. The Copyright Infringement Claim Satisfies Notice Pleading Requirements.

Defendants' argument that Adherence failed to satisfy the notice pleading requirements for alleging copyright infringement in its First Amended Complaint are utterly without merit. In its FAC, Adherence makes the following allegations which fully satisfy the notice pleading required to allege copyright infringement:[25]

> 40. In September of 2023, Adherence Chief Executive Officer, Philip Morisky, connected on Linkedin with Lead CVS Specialty Pharmacist Ali Mohempour, PharmD. In response, Dr Mohempour sent the following:
>
> Sep 18
>
> **Ali Mohempour, PharmD** * 5:22 pm
> Philip it's a pleasure connecting with you! We use MMAS-4 and MMAS-8 ev[ery] single day via Asembia-1 clinical platform . . . thank you for everything you and you[r] father have done for improving patient' lives.
> . . .

---

[25] FAC (ECF 9 at 9-10).

42. On September 21, 2023, Mr. Philip Morisky reached out to Asembia VP, Clinical Operations & Technology, Veena Chien, who confirmed that "the MMAS-3 [sic] and MMAS-8 scales are included in our [Asembia-1] standard scripting across most if not all disease state protocols."

43. Thereafter, Mr. Morisky met personally with Dr. Mohempour and asked him how long CVS had been using the MMAS-4 and MMAS-8 within the Asembia-1 platform. Dr. Mohempour's response was: "Ever since we [CVS] received URAC accreditation."

44. CVS received URAC accreditation on April 5, 2016. On April 5, 2016, CVS issued a press release announcing, "today that CVS Specialty, the company's specialty pharmacy, has been awarded Specialty Pharmacy accreditation from URAC, a Washington, DC-based health care accrediting organization."

In these few paragraphs, Adherence alleges that CVS uses the "MMAS-4 and the MMAS-8" without any modifications or limitations and that the "MMAS-4 and the MMAS-8" were provided "via the Asembia-1 clinical platform" again without any modification or limitations. As further alleged in the Complaint, the "MMAS-4" and the "MMAS-8" are defined terms that mean respectively the entire text of Trademark Registration TX0008285390 (MMAS-4) and TX0008632533 (MMAS-8).[26] In the absence of any qualifying or limiting language (e.g. "a part" or "a portion") the only reasonable conclusion to the referenced registered copyrights is that no qualifying language was intended, such that it would be impermissible to "read into" the allegation limitations that are simply not there.

There is no allegation that "a portion" of the MMAS-4 or MMAS-8 were infringed. Thus, the only reasonable and grammatically correct conclusion that can be made from these allegations is that Asembia copied used and CVS used without permission or authorization the copyrighted MMAS-4 and the MMAS-8 entirely without modifications or limitations.

Further, Adherence alleges that Defendants identified the MMAS-4 and the MMAS-8 they copied and used by name—by their trademarks. Asembia and CVS identified these scales under the MORISKY MEDICATION ADHERENCE SCALES

---

[26] FAC (ECF 9 at 7).

mark and MMAS® registered trademark.[27]  There is no allegation that the Morisky Medication Adherence Scales were generically referenced as "adherence scales" in the Asembia-1 platform. To the contrary, both Dr. Mohempour and Asembia's VP of Clinical Operations specifically identified them by their trademarks: the "MMAS-4 and MMAS-8." Further, Dr. Mohempour confirmed that he knows the true source of these scales is not CVS or Asembia but Dr. Donald Morisky.

Thus, as plainly alleged in the FAC <u>and confirmed by Defendants themselves</u> by their identification by trademark of the unlawfully copied works, Defendants cannot seriously claim they were not put on notice of their infringing behavior or of its extent. Defendants unlawfully downloaded and used for over 8 years what they identified without equivocation or limitation as "the MMAS-4 and the MMAS-8".  Defendants' claim that this is inadequate to put them on notice when the Asembia-1 platform is alleged to have a module identified as the "Morisky Medication Adherence Scales" in which the "MMAS-4" and "MMAS-8" are specifically identified by name and mark is disingenuous.  They were put on notice by the FAC that they infringed the entirety of the MMAS-4 and MMAS-8 copyright registrations.

Not one of the cases referenced by Defendants saves them from their duplicity. Every case relied upon is utterly irrelevant to the facts at bar because in those cases the allegation was that an unidentified "portion" of the registration was infringed.  There is no such allegation of a mere "portion" of the MMAS-4 or MMAS-8 being infringed in the FAC.  Defendants' infringement was alleged to be intentional and <u>COMPLETE</u>.

**D.    Alternatively, Leave to Amend Should Be Granted**

In the alternative, and to the extent the Court finds that Plaintiff is required to specifically allege that the MMAS-4 and MMAS-8 were copied completely and infringed by Defendants, the Court should grant Plaintiff leave to so amend.  Rule 15(a)(2) provides that leave to amend should be granted freely. This Circuit has further held that that this policy favoring amendment shall be

---

[27] FAC (ECF 9 at 9).

applied with "extreme liberality."[28] In fact, the Ninth Circuit has held that "denial of leave to amend where leave is necessary and requested is itself appealable for abuse of discretion."[29]  Here justice would require that Plaintiff should be given leave to amend should the Court find that the absence of limiting language (eg. "a portion") was insufficient to put Defendants on notice that for the past 8 plus years Defendants are alleged to have been intentionally infringing all protectable elements of the registered MMAS-4 and MMAS-8 copyrights.

### III.     CONCLUSION

Based on the foregoing, Adherence respectfully requests that this Court deny Defendants' Motion to dismiss Adherence's claim for copyright infringement, or in the alternative, Plaintiff should be granted leave to amend its copyright infringement claim pursuant to Rule 15.

Dated: January 31, 2025.

LEX TECNICA, LTD.

*/s/ F. Christopher Austin*
F. Christopher Austin
LEX TECNICA, LTD
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145
702-518-5535

*Attorneys for Plaintiff Adherence*

---

[28] *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001).

[29] *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986).

- 13 -