# EXHIBIT 9



Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**JENNIFER INSLEY-PRUITT**
*Partner*

Jennifer.Insley-Pruitt@dechert.com
+1 212 698 3653  Direct

June 25, 2025

**VIA EMAIL**

F. Chris Austin, Esq.
Samuel Castor, Esq.
Jared Doster, Esq.
Scott Whitworth, Esq.
Lex Tecnica, Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
*chris@lextecnica.com, sam@lextecnica.com*
*jared@lextecnica.com, scott@lextecnica.com*

**Re:    Defamation Per Se by Adherence and Philip Morisky**

Counsel:

As you know, we represent Asembia, LLC in ongoing litigation brought by your client, Adherence.  It has come to our attention that your client and its President and CEO Philip Morisky persist in publishing false and defamatory statements about Asembia, including to their social media audiences on LinkedIn.  This conduct is in egregious violation of our client's rights and demands immediate action.

In a single LinkedIn post from June 13, Adherence makes numerous entirely false and defamatory statements about our client, including stating that Asembia's alleged use of Adherence's MMAS forms within the Asembia-1 platform constituted "fraud" and caused a "public health problem," as well as a litany of other harms to patients and to the public:

- "Pharmacies made clinical decisions off of bad data."

- "Payers calculated performance off of junk metrics."

- "Accreditation was granted on a false foundation."



June 25, 2025
Page 2

- "It's a public health problem."

- "We're talking fraud, misrepresentation, and system-wide exposure."

*See* Exhibit A.  And in a similar Linkedin post on June 18 discussing the pending District of Nevada lawsuit, Adherence stated, falsely, that Asembia "endanger[s] patient care" and further that Asembia's conduct shook "the very foundation of trust, accreditation, and payer legitimacy across the entire specialty pharmacy ecosystem."  Exhibit B.

Adherence is well aware that none of this is true, but it nonetheless chooses to disseminate false and defamatory statements about our client.  Your client's campaign of lies is in violation of the law.  These false statements represent a clear attack on Asembia's reputation and business and constitute defamation per se.  Adherence's false statements deceive actual and potential clients of Asembia, including by leading them to believe that Asembia provided "bad data" to pharmacies and caused harm to patients.

Please be advised that our client fully intends to hold Adherence and Mr Morisky accountable for these flagrant violations of its rights.  For now, in order to avoid still greater liability and damages exposure, Adherence, Mr. Morisky and all other agents of theirs and/or entities related to them or under their control must immediately and permanently cease and desist their ongoing misconduct, including by deleting the referenced posts.

This letter is sent without waiver of any of our clients' rights, claims, or remedies, all of which are expressly reserved.

Very truly yours,

*[signature: Jennifer Insley-Pruitt]*

Jennifer Insley-Pruitt



June 25, 2025
Page 3

# EXHIBIT A





June 25, 2025
Page 4

# EXHIBIT B



**adherence.**
2,164 followers
1d • Edited

What will URAC do now?

When an accredited organization like Asembia is accused of pirating and profiting from stolen technology, this isn't just an internal issue. It shakes the very foundation of trust, accreditation, and payer legitimacy across the entire specialty pharmacy ecosystem.

URAC accreditation isn't just a badge.

 It opens doors to payer contracts, insurance reimbursements, formulary inclusion, and exclusive patient access programs.

 So when a URAC-accredited vendor is exposed for misrepresenting IP ownership—what happens to the pharmacies, payers, and PBMs who relied on that accreditation as a stamp of credibility?

Will URAC take a zero-tolerance stance against actors who deceive the market and endanger patient care?

Will payers and insurers reevaluate their own reliance on vendor-provided claims and demand transparency moving forward?

Most importantly:

 Who notifies the patients of CVS Specialty under the leadership of Lucille Accetta and other specialty pharmacies and companies listed on the Asembia-1 website when the tools supporting their therapy were built on lies? Patients have a right to know if they were improperly diagnosed and all the liabilities that come with that.

 Who owns that ethical burden? URAC? The pharmacy? The insurer?
This is a moment of reckoning.

Will URAC protect patients and integrity, or will it protect its own reputation?
The industry is watching. And so are regulators, payers, and the public.

 See: Adherence v. CVS Health Corp., 2:24-cv-01590-JCM-NJK

and the lawyers for Asembia: Dechert LLP @vincent cohen @jennifer insley-pruitt @eric rotteveel