# EXHIBIT 11

         



**Megan Gentleman** ✓
Intellectual Property Paralegal
Collegeville, Pennsylvania
Dechert LLP

Access exclusive tools & insights
Try Premium for $0

Profile viewers   17
View all analytics



**adherence.**
2,190 followers
2w • Edited • 🌐

Follow   •••

What will **URAC** do now?

When an accredited organization like **Asembia** is accused of taking a tool that does not belong to them and putting it on their platform and selling it as part of their Asembia-1 platform, this isn't just an internal issue. It is an external issue that is being dealt with in the federal court system.

URAC accreditation isn't just a badge.

 It opens doors to payer contracts, insurance reimbursements, formulary inclusion, and exclusive patient access programs.

 So when a URAC-accredited vendor is exposed for misrepresenting IP ownership— what happens to the pharmacies, payers, and PBMs who relied on that accreditation as a stamp of credibility?

Will URAC take a zero-tolerance stance against actors who deceive the market and endanger patient care?

Will payers and insurers reevaluate their own reliance on vendor-provided claims and demand transparency moving forward?

Most importantly:

 Who notifies the patients of **CVS Specialty** under the leadership of Lucille Accetta and other specialty pharmacies and companies listed on the **Asembia-1** website when the tools supporting their therapy were taken and used without permission? Patients have a right to know.

 Who owns that ethical burden? URAC? The pharmacy? The insurer?
This is a moment of reckoning.

Will URAC protect patients and integrity, or will it protect its own reputation?
The industry is watching. And so are regulators, payers, and the public.

 See: Adherence v. **CVS Health** Corp., 2:24-cv-01590-JCM-NJK

and the lawyers for Asembia: **Dechert LLP** @vincent cohen @jennifer insley-pruitt @eric rotteveel



