| | |
|---|---|
| Chad R. Fears, Esq. (SBN 6970)<br>EVANS FEARS SCHUTTERT MCNULTY MICKUS<br>6720 Via Austi Parkway, Suite 300<br>Las Vegas, Nevada 89119<br>Telephone:  702-805-0290<br>Facsimile:  702-805-0291<br>Email: cfears@efsmmlaw.com | Jennifer Insley-Pruitt (*pro hac vice*)<br>DECHERT LLP<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3500 (Telephone)<br>(212) 698-3599 (Facsimile)<br>Email: jennifer.insley-pruitt@dechert.com |

Jeffrey S. Edwards (*pro hac vice*)
Luke M. Reilly (*pro hac vice*)
Eric Rotteveel (*pro hac vice*)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000 (Telephone)
(215) 994-2222 (Facsimile)
Email: jeffrey.edwards@dechert.com
       luke.reilly@dechert.com
       eric.rotteveel@dechert.com

*Attorneys for Defendants CVS Pharmacy, Inc. and Asembia, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ADHERENCE d/b/a of MORISKY MEDICATION ADHERENCE RESEARCH LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; and ASEMBIA, LLC, a Delaware limited liability company,<br><br>Defendants. | **Case No. 2:24-cv-01590-JCM-NJK**<br><br>**DEFENDANTS CVS PHARMACY'S AND ASEMBIA, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[FILED UNDER SEAL]**<br><br>**ORAL ARGUMENT REQUESTED** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants CVS Pharmacy, Inc. ("CVS") and Asembia, LLC ("Asembia") (collectively "Defendants") hereby move for entry of summary judgment against Plaintiff Adherence d/b/a of Morisky Medication Adherence Research LLC ("Adherence" or "Plaintiff") and for Defendants on Defendants' Second Counterclaim for Cancellation of U.S. Reg. No. 5,837,273 for Abandonment by Naked Licensing and Defendants' Fourth Counterclaim for Declaratory Judgment of Invalidity of Trademarks due

to Abandonment by Naked Licensing, as well as on Plaintiff's First and Third Claims for Relief, which are Plaintiff's sole remaining claims in this action. This Motion is based upon the accompanying memorandum of points and authorities, exhibits, and affidavits, and the pleadings in this matter.

Dated: July 15, 2025.

                                          DECHERT LLP

By:   *Chad R. Fears*
      Jennifer Insley-Pruitt (*pro hac vice*)
      Three Bryant Park
      1095 Avenue of the Americas
      New York, NY 10036
      (212) 698-3500 (Telephone)
      (212) 698-3599 (Facsimile)
      Email: jennifer.insley-pruitt@dechert.com

Chad R. Fears, Esq. (NBN 6970)
EVANS FEARS SCHUTTERT MCNULTY MICKUS
6720 Via Austi Parkway, Suite 300
Las Vegas, Nevada 89119
Telephone: 702-805-0290
Facsimile: 702-805-0291
Email: cfears@efsmmlaw.com

Jeffrey S. Edwards (*pro hac vice*)
Luke M. Reilly (*pro hac vice*)
Eric Rotteveel (*pro hac vice*)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000 (Telephone)
(215) 994-2222 (Facsimile)
Email: jeffrey.edwards@dechert.com
       luke.reilly@dechert.com
       eric.rotteveel@dechert.com

*Attorneys for Defendants CVS Pharmacy, Inc. and Asembia, LLC*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

In its only remaining counts in this litigation, Plaintiff claims that Defendants infringed its purported rights in the federally registered trademark MMAS and two alleged common law marks, MORISKY and MORISKY MEDICATION ADHERENCE SCALE (all three asserted marks together, the "Alleged Morisky Marks").[1]  But Plaintiff's own actions have doomed its alleged marks.  As a trademark licensor, Plaintiff has a duty to control the quality of the goods and services offered under its marks by licensees.  Discovery in this case has revealed a startling fact: Plaintiff has completely abdicated that duty, and its Alleged Morisky Marks are therefore abandoned as a matter of law.

Plaintiff's document production demonstrates that it has repeatedly granted "naked" licenses of its Alleged Morisky Marks—which is to say, trademark licenses devoid of terms that would allow Plaintiff to exercise any control over the quality of goods or services provided under the Alleged Morisky Marks by licensees.  The law is clear: "where a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice . . . constitutes abandonment of any rights to the trademark by the licensor."  *Barcamerica Int'l USA Tr. v. Tyfield Imp., Inc.*, 289 F.3d 589, 598 (9th Cir. 2002).  Plaintiff has done this not once, not twice, but more than fifty times, across dozens of trademark licenses with dozens of different licensees.  In fact, out of the more than fifty executed trademark license agreements produced by Plaintiff, *not a single one incorporates any contractual right to inspect and supervise a licensee's use of Plaintiff's Alleged Morisky Marks*.

There is no genuine dispute of material fact that Plaintiff has engaged and continues to engage in systematic naked licensing of the Alleged Morisky Marks.  Because such naked licensing constitutes abandonment of Plaintiff's claimed rights in the asserted marks, the Court should enter judgment for Defendants and against Plaintiff on Defendants' Second and Fourth Counterclaims and therefore order cancellation of U.S. Reg. No. 5,837,273 of the MMAS mark

---

[1] Plaintiff defines the phrase "Morisky Marks" in two different ways in the FAC.  *Compare* FAC at Preamble (listing MMAS, MORISKY, and MORISKY ADHERENCE SCALE) *with* ¶ 33 (listing MORISKY, MORISKY MEDICATION ADHERENCE SCALE, and MMAS).  Plaintiff's marks are deficient under either definition.

1  (the "MMAS Registration")[2] and declare all three of Plaintiff's Alleged Morisky Marks invalid as
2  a matter of law, and further enter judgment for Defendants and against Plaintiff on Plaintiff's only
3  remaining claims in this action, the First and Third Claims for Relief ("Trademark Infringement –
4  15 U.S.C. § 1125" and "Common Law Trademark Infringement").

## II. PROCEDURAL HISTORY

Plaintiff filed its initial complaint in this action on August 28, 2024, and its First Amended Complaint ("FAC") on October 16, 2024. ECF Nos. 1, 9. In its FAC, Plaintiff asserts claims based on Defendants' alleged use of Plaintiff's so-called "Morisky Medication Adherence Scales" (the "MMAS Questionnaires"), which are short questionnaires of four or eight questions related to compliance with medication regimens, and the associated Alleged Morisky Marks. *Id.*; *see also* ECF Nos. 12-2 (MMAS-4); ECF 12-3 (MMAS-8). The FAC contained five "Claims for Relief": (1) trademark infringement under 15 U.S.C. § 1125, (2) copyright infringement under 17 U.S.C § 101, (3) common law trademark infringement, (4) deceptive trade practices under N.R.S § 598.0915, and (5) intentional interference with prospective contractual relations. *Id.*

In response, Defendants filed a partial motion to dismiss the Second, Fourth, and Fifth Claims for Relief of the First Amended Complaint. ECF No. 12. On June 26, 2025, the Court granted that motion, dismissing Plaintiff's claims of copyright infringement, deceptive trademark practices, and intentional interference with prejudice and holding that Plaintiff's MMAS Questionnaires were "blank forms" inherently unprotectable under the Copyright Act. ECF No. 65 at 6-7. Accordingly, only Plaintiffs' trademark infringement claims remain in the case. *Id.* at 7.

Defendants filed their Answers and Counterclaims on July 2, 2025. ECF Nos. 71, 73. Both Defendants brought counterclaims for: (1) cancellation of the MMAS Registration based on abandonment by nonuse of the mark in connection with the registered goods and services; (2) cancellation of the MMAS Registration based on abandonment by naked licensing; (3)

---

[2] Plaintiff's FAC alternately identifies the registration number of the alleged MMAS mark as "Reg. No. 87775045," FAC at Preamble, and Reg. No. 5837273, FAC ¶ 35 & Ex. 3. The latter reference is correct, as U.S. App. Serial No. 87,775,045 is the trademark application number, not the registration number, of the alleged MMAS mark. *See* FAC Ex. 3.

declaratory judgment of lack of trademark rights in any of the Alleged Morisky Marks due to non-use abandonment; and (4) declaratory judgment of lack of trademark rights in the Alleged Morisky Marks due to naked licensing.³ Defendants now seek entry of summary judgment in favor of Defendants on Defendants' Second and Fourth Counterclaims, seeking cancellation of the MMAS Registration based on abandonment by naked licensing and a declaration that Plaintiff has abandoned any and all rights in the Alleged Morisky Marks due to abandonment by naked licensing, as well as entry of judgment for Defendants and against Plaintiff on Plaintiff's sole remaining claims of federal and common law trademark infringement (First and Third Claims for Relief). *See* Fed. R. Civ. P. 56(b) ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery").

### III.   STATEMENT OF UNDISPUTED FACTS

#### A.   Plaintiff's Asserted Rights in the Alleged Morisky Marks

In this litigation, Plaintiff alleges that "[b]y operation of federal trademark law," the Alleged Morisky Marks "have acquired trademark rights in connection with the provision of diagnostic procedures to assess adherence to medication protocols, and in connection with identifying and proscribing compliance and intervention protocols and other related goods and services offered in connection with the same." FAC ¶ 33. Plaintiff claims that the Alleged Morisky Marks "function as secondary source identifiers in that they . . . identify the source of such diagnostic and intervention protocol and related goods and services," and therefore that the Alleged Morisky Marks "are protectable marks under federal trademark law." *Id.* ¶ 34.

Of the Alleged Morisky Marks, only MMAS is the subject of a federal trademark registration: U.S. Reg. No. 5,837,273, held in the name of Donald Morisky. FAC Ex. 3 (Reg. No. 5,837,273 for MMAS). Plaintiff alleges that all rights in the three Alleged Morisky Marks and the MMAS Registration were assigned to Plaintiff by Donald Morisky. *Id.* ¶ 36; Ex. 1.

---

³ Asembia also asserted an additional counterclaim for defamation per se based on Plaintiff's inherently false and defamatory statements about Asembia. ECF No. 71 ¶¶ 82-87.

### B. Plaintiff's Naked Licenses of the Alleged Morisky Marks

In this litigation, Plaintiff has produced more than fifty executed license agreements, each of which grants an identified licensee the right to use some or all of the Alleged Morisky Marks (all of Plaintiff's trademark license agreements together, the "License Agreements"). *See* Exs. 3-5; 7-8; 10-59.[4] Of these dozens of License Agreements, *every single one* lacks a quality control provision that would allow Plaintiff to exercise control over the use of its licensed marks by the licensee.

Plaintiff's License Agreements incorporate the following or substantively identical language constituting the trademark license grant:

> Licensee acknowledges and agrees that Licensor is granting Licensee limited permission to use the Morisky name, brand, and trademarks including: Morisky Platform™, MMAS™, Morisky Medication Adherence Scale™ and translations of the MMAS™ trademark ("Licensor's Trademarks"). This limited permission does not grant Licensee the right to transfer use of the Licensor's Trademarks or grant Licensee any use of the Licensor's Trademarks beyond the rights authorized and/or contemplated by this License Agreement.

Ex. 58 [License to Santen Inc. at MMAR007123]. None of the License Agreements contain any express contractual provision allowing Plaintiff to control, guide, limit, inspect, or supervise the use of the Alleged Morisky Marks by the licensees under any circumstances. In fact, the overwhelming majority of the License Agreements do not provide any indication even of what the license grant to use the identified trademarks might or might not cover—just that it is "limited."

There is no evidence in the record that, notwithstanding the lack of any express contractual right to do so, Plaintiff ever actually inspected or supervised the use of the Alleged Morisky Marks by *any* of its licensees, much less all of them.

---

[4] Plaintiff produced a list indicating that it has licensed the MMAS forms, presumably along with the Alleged Morisky Marks, to over two hundred total licensees. Ex. 60 [MMAR000747]. Upon Defendants' request that Plaintiff produce the remaining licenses, Plaintiff represented that it was not in possession of any written license agreements additional to the more than fifty already produced to Defendants. Ex. 2 [Email from Plaintiff's counsel to Defendants' counsel].

IV. **ARGUMENT**

A. **Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the moving party makes a *prima facie* showing that it is entitled to summary judgment, the burden shifts to the non-moving party to present specific evidence identifying a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he nonmoving party 'may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) (quoting *Anderson*, 477 U.S. at 256); *see also Turf v. US Turf LLC*, No. 2:21-cv-01749-JCM-DJA, 2023 WL 6379450, at *2 (D. Nev. Sept. 29, 2023) ("[T]he nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.") (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). As such, "uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. "Cancellation of a trademark registration is proper 'when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing.'" *T.R.P. Co., Inc. v. Similasan AG*, 2:17-cv-2197-JCM-DJA, 2020 WL 1940564, at *4-6 (D. Nev. Apr. 22, 2020) (in trademark infringement action in which defendant brought counterclaim for cancellation of plaintiff's federal trademark registration, ordering cancellation of registration, entering declaratory judgment of non-infringement for defendant, and finding that, accordingly, plaintiff's cause of action for federal trademark infringement failed).

### B. "Naked" Licenses Without Quality Control Constitute Abandonment As a Matter of Law

The principal role of a trademark is to identify the source of goods or services for consumers. *See, e.g.*, *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) ("[t]he purpose of a trademark . . . is to identify a good or service to the consumer"). "[C]ustomers are entitled to assume that the nature and quality of goods and services sold under [a given] mark at all licensed outlets will be consistent and predictable." *Barcamerica*, 289 F.3d at 598. Trademark owners, in turn, have a "duty to make sure that the good or service [provided under the mark] really is of consistent quality, *i.e.*, really is the same good or service." *Dep't of Parks & Recreation*, 448 F.3d at 1131 (affirming district court denial of preliminary injunction and finding that alleged trademark licensor failed to exercise quality control over its marks). In other words, "[t]rademark owners have a duty to control the quality of their trademarks." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010).

When a trademark owner licenses its mark to third parties, the owner retains a duty to exercise reasonable control over the licensee's use of the mark. *Dep't of Parks & Recreation*, 448 F.3d at 1131 ("the only effective way to protect the public . . . is to place on the licensor the affirmative duty of policing in a reasonable manner the activities of his licensees"). "Naked licensing occurs when the licensor fails to exercise adequate quality control over the licensee," *FreecycleSunnyvale*, 626 F.3d at 515, thereby "creat[ing] the danger that products bearing the same trademark might be of diverse qualities," *First Interstate Bancorp v. Stenquist*, 16 U.S.P.Q.2d 1704, 1990 WL 300321, at *3 (N.D. Cal. 1990), such that the trademark "ceas[es] to function as a symbol of quality and a controlled source." *FreeCycleSunnyvale*, 626 F.3d at 515.

A trademark subjected to naked license therefore effectively ceases to work as a trademark—which is to say, as a reliable indicator of the single source of the goods or services in connection with which it is used and a guarantee of the uniform quality of those goods. Accordingly, "where a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice . . . constitutes abandonment of any rights to the trademark by the licensor." *Barcamerica*, 289 F.3d at 598. Abandonment by naked

1  licensing "is purely an involuntary forfeiture of trademark rights," and therefore "it need not be
2  shown that the trademark owner had any subjective intent to abandon the mark." *Id.* at 596.  In
3  other words, "[a] party may thus lose the protection of the mark without intending to do so."
4  *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1030 (N.D. Cal. 2003); *see also First*
5  *Interstate Bancorp*, 1990 WL 300321 at *3 ("a finding of insufficient control essentially works a
6  forfeiture").  Because a trademark owner that engages in naked licensing "has abandoned the
7  trademark . . . the owner [is] estopped from asserting rights to the trademark."
8  *FreecycleSunnyvale*, 626 F.3d at 516; *see also Halo Mgmt., LLC v. Interland, Inc.*, 76 U.S.P.Q.2d
9  1199, 2004 WL 1781013, at *3 (N.D. Cal. 2004) ("Once a trademark holder enters a naked
10 license—that is, once a holder abandons the trademark—the holder is estopped from asserting
11 rights [related] to [that] mark").

12    "When deciding summary judgment on claims of naked licensing, [courts] first determine
13 whether the license contained an express contractual right to inspect and supervise the licensee's
14 operations." *FreecycleSunnyvale*, 626 F.3d at 516.  "The absence of an agreement with
15 provisions restricting or monitoring the quality of goods or services produced under a trademark
16 supports a finding of naked licensing." *Id*.  Next, the court will consider whether,
17 notwithstanding the lack of an express contractual right to control quality, the licensor maintained
18 actual control over the licensed use. *Id.*  While "[t]he lack of an express contract right to inspect
19 and supervise a licensee's operations is not conclusive evidence of lack of control . . . where
20 courts have excused the lack of a contractual right to control quality, they have still required that
21 the licensor demonstrate actual control through inspection or supervision." *Id* at 516-17.  When a
22 licensor and licensee have a "close working relationship," the licensor may be able to rely on the
23 licensee's own quality control efforts, but such an ongoing relationship is "not alone sufficient to
24 show that a naked license has not been granted." *Id.* at 519.  In such situations, the licensor must
25 also demonstrate "other indicia of control." *Id.*

26    Courts in this circuit have consistently found on summary judgment that the combination
27 of evidence of trademark licenses that are "naked" of any contractual right to exercise quality
28 control and *lack* of evidence of actual control of licensee use compels a finding that the licensed

marks are invalid due to abandonment. *See, e.g., FreecycleSunnyvale*, 626 F.3d at 520 (affirming grant of summary judgment due to licensor's lack of contractual or actual ability to exercise quality control); *Barcamerica*, 289 F.3d at 598 (affirming summary judgment and holding that "Barcamerica engaged in naked licensing of its 'Leonardo Da Vinci' mark—and that by so doing, Barcamerica forfeited its rights in the mark"); *First Interstate Bancorp*, 1990 WL 300321, at *4-5 (granting summary judgment on claim of trademark abandonment where "[licensor] did not exercise sufficient quality control to protect its trademark" due to "the lack of any controls or restrictions in the agreement itself" and "[licensor] did not engage in any meaningful supervision or inspection"). Given that abandonment of a mark amounts to a total loss of ownership rights, infringement claims based on abandoned marks cannot be maintained. *See, e.g.*, *Barcamerica*, 289 F.3d at 598 (affirming summary judgment for defendants on infringement claim on basis that owner of alleged mark abandoned the mark through naked licensing).

The naked licensing doctrine applies to both common law and federally registered trademarks. *See FreecycleSunnyvale*, 626 F.3d at 513, 520 (holding that trademark owner abandoned claimed common law trademarks through naked licensing); *Barcamerica*, 289 F.3d at 591, 598 (holding that trademark owner abandoned federally registered trademark though naked licensing). When a federally registered mark is found to have been subject to naked license, the court will order cancellation of the registration in question on grounds of abandonment. *See Barcamerica*, 289 F.3d at 598 (affirming determination that "Barcamerica forfeited its rights in the mark" and finding that "cancellation of Barcamerica's registration of the mark was appropriate"); *see also id.* ("naked licensing can result in such a loss of significance of a trademark that its federal registration should be cancelled").

### C. There Is No Genuine Issue of Material Fact that Plaintiff Has Licensed Its Alleged Marks Without Any Ability to Exercise Quality Control

While Plaintiff's License Agreements differ slightly in form, none of the License Agreements incorporate any express contractual right for Plaintiff to inspect and supervise its licensee's operations. *See, e.g.*, Exs. 3-5, 7-8, 10-59. In fact, the overwhelming majority of License Agreements do not provide any guidance at all even as to how the licensee may use

Plaintiff's mark. *See, e.g., id.* Those License Agreements that do purport to incorporate such guidance are startlingly broad. For example, Plaintiff's license with Indegene grants the licensee the apparently unlimited right to use the Alleged Morisky Marks "across Licensee's business activities." Ex. 30. None of the License Agreements provide Plaintiff with any contractual ability to terminate the licenses should the licensee misuse the Alleged Morisky Marks or fall short of any supposed quality associated with goods or services provided under the Alleged Morisky Marks.

The record is likewise devoid of any evidence that Plaintiff actually exercised quality control over its licensees. In discovery, Defendants requested production of "All documents concerning license of rights in or to any Morisky Mark." Ex. 9 at 6 [RFP 10]. Plaintiff stated in response that it had "conducted a reasonably diligent search and . . . produced all relevant documents responsive to this Request that it has been able to identify that are within its possession, custody, and control." *Id.* [Response to RFP 10]. Defendants followed up specifically on this point, requesting that Plaintiff produce "[c]ommunications with current and past licenses" and "[c]ommunications relating to the licensing of the Morisky Marks" in order to evidence "Plaintiff's history of licensing the purported intellectual property rights in question." Ex. 2 at 3; Ex. 6 at 2-3. Plaintiff, in reply, stated again that it had already "produced . . . everything that our client provided us in response to your requests." Ex. 2 at 1.

Plaintiff has therefore apparently produced all communications with trademark licensees in its possession, custody, or control. However, nothing in Plaintiff's document production evidences any effort by Plaintiff to exercise quality control over licensee use of the Alleged Morisky Marks, nor any attempt to actually supervise licensee use of the Alleged Morisky Marks, or to otherwise inspect any goods or services offered by licensees under the Alleged Morisky Marks. Insley-Pruitt Decl. ¶ 63. Likewise, Plaintiff has produced no evidence of any close working relationship with any of the more than fifty trademark licensees identified in the License Agreements produced by Plaintiff that might allow Plaintiff to rely on the quality control measures of those licensees. Insley-Pruitt Decl. ¶ 63; *see FreecycleSunnyvale*, 626 F.3d at 518 (requiring that "licensor and licensee be involved in a close working relationship to establish

1   adequate quality control in the absence of a formal agreement" but noting that "sole reliance on a
2   licensee's own control quality efforts is not enough to overcome a finding of naked licensing
3   without other indicia of control"). ***In fact, Plaintiff has produced almost no post-license grant***
4   ***communications with its licensees, period***. Insley-Pruitt Decl. at ¶ 64. Ultimately, there is no
5   evidence in the record that Plaintiff has actually conducted any inspection or supervision of any
6   activity of any licensee, nor that Plaintiff has ever exercised any quality control of any good or
7   service offered by any licensee under the Alleged Morisky Marks. *Id.*
8        In *Halo Management, LLC v. Interland, Inc.*, the defendant moved for summary judgment
9   on Halo's trademark infringement claim, arguing that "HM abandoned its 'HALO' trademark by
10  entering into a 'naked license.'" 2004 WL 1781013, at *3. In *Halo*, "[n]o explicit or definite
11  quality control terms appear anywhere in the two-page licensing agreement; no objective,
12  enforceable terms guide (or limit) [licensee's] use of the mark." *Id*. at *4. Instead, the license
13  only required the licensee to "employ reasonable commercial efforts to maintain the positive
14  business value of the HALO mark," to "limit mark use to that substantially as shown in the
15  pending applications…", and to cooperate with the licensor to "mitigate the confusion or
16  likelihood of confusion between the parties' respective marks." *Id*. Importantly, as the court
17  explained, "[n]one of these requirements—nor the three taken together—place any distinct or
18  cognizable restriction on the quality of goods Planet Halo may produce or distribute under the
19  mark." *Id*. The licensor, under that agreement, "retain[ed] no express contractual right to inspect
20  or supervise [licensee's] conduct," and "lack[ed] even the ability to terminate the license should
21  [licensee] derogate its supposed 'quality' or 'value' obligations." *Id*. Accordingly, the court
22  found that this was a clear example of a naked license. *Id.*
23       The court also considered the mark holder's conduct and found that nothing in the record
24  indicated that there had been any legitimate efforts at quality control by the mark holder. *Id*. at
25  *4-6. There was no ongoing working relationship between the mark holder and licensee, the
26  mark holder never reviewed any of the products of the licensee, and the licensee had never sought
27  the mark holder's permission or guidance on manufacturing or demonstrating the products in
28  question. *Id*. "Indeed, nothing in the record suggests that [the mark holder] was remotely

interested in any of these activities and there is nothing in the record to show that [licensee] was familiar with [the mark holder's] internal quality control efforts." *Id* at*5. The court therefore granted defendant's motion for summary judgment, finding that no efforts by the mark holder "change the character of the 'naked' license between HM and [licensee]—and they do not restore HM's forfeited state or federal rights." *Id*. at *6.

Here, as in *Halo*, the License Agreements are textbook naked licenses. And as in *Halo*, nothing that Plaintiff has done can make up for this flaw. ***Courts have found trademark abandonment due to naked licensing based on a single license lacking any quality control provisions***. *See, e.g.*, *FreecycleSunnyvale*, 626 F.3d at 516 (affirming summary judgment of naked licensing based on one license); *Barcamerica*, 289 F.3d at 592 (affirming summary judgment of naked licensing considering only the relationship between licensor and a single licensee); *Halo*, 2004 WL 1781013, at *4 (granting summary judgment based on a single naked license); *First Interstate Bancorp*, 1990 WL 300321, at *2 (same). Here, Plaintiff has not executed a single naked license, but *dozens*, all of which lack any contractual right for Plaintiff to exercise quality control. *See, e.g.* Exs. 3-5; 7-8; 10-59. Tellingly, Plaintiff has not produced a single executed license incorporating an express contractual right for Plaintiff to exercise quality control over the use of the Morisky Marks, nor has Plaintiff produced a single document indicating any other indicia of control over its licensees. Insley-Pruitt Decl. at ¶ 62.

The record makes clear that Plaintiff has engaged in naked licensing of the Alleged Morisky Marks on a mass scale. As such, the Alleged Morisky Marks have lost whatever trademark significance they might once have had, and must be deemed abandoned as a matter of law.

## V. CONCLUSION

Because there is no genuine dispute of material fact that Plaintiff has failed to exert any sort of quality control over licensees of the Alleged Morisky Marks, the Court should (1) enter summary judgment for Defendants on Defendants' Second and Fourth Counterclaims, and therefore declare Plaintiff's Alleged Morisky Marks invalid based on abandonment through pervasive and systematic naked licensing and order cancellation of Plaintiff's U.S. Reg. No.

5,837,273 for MMAS, and (2) because Plaintiff's Alleged Morisky Marks are invalid, further enter summary judgment for Defendants on Plaintiff's First and Third Claims for Relief.

Dated: July 15, 2025

DECHERT LLP

By:  Chad R. Fears
Jennifer Insley-Pruitt (*pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500 (Telephone)
(212) 698-3599 (Facsimile)
Email: jennifer.insley-pruitt@dechert.com

Chad R. Fears, Esq. (NBN 6970)
EVANS FEARS SCHUTTERT MCNULTY MICKUS
6720 Via Austi Parkway, Suite 300
Las Vegas, Nevada 89119
Telephone: 702-805-0290
Facsimile: 702-805-0291
Email: cfears@efsmmlaw.com

Jeffrey S. Edwards (*pro hac vice*)
Luke M. Reilly (*pro hac vice*)
Eric Rotteveel (*pro hac vice*)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000 (Telephone)
(215) 994-2222 (Facsimile)
Email: jeffrey.edwards@dechert.com
        luke.reilly@dechert.com
        eric.rotteveel@dechert.com

*Attorneys for Defendants CVS Pharmacy, Inc. and Asembia, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of:
**DEFENDANTS CVS PHARMACY'S AND ASEMBIA, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

was served on counsel of record this 15th day of July, 2025, via email and first-class mail as follows:

Lex Tecnica, Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145

Chris@lextecnica.com
Sam@lextecnica.com
nick@lextecnica.com
Scott@lextecnica.com

　　　　　　　　　　/s/ Faith Radford
　　　　　　　　　　An Employee of Evans Fears Schuttert McNulty Mickus

13