# EXHIBIT 1

ADHERENCE V. CVS PHARMACY, INC. & ASEMBIA, LLC
*(U.S. District Court Case No.* Case No. 2:24-cv-01590-JCM-NJK*)*

License Agreement for Tufts Medicine

This license agreement, a grant of a non-exclusive, global license ("**License Agreement**") is made on the date of last signature ("**Effective Date**") between **Tufts Medicine Department of Obstetrics and Gynecology ("Licensee")** with an office at **800 Washington St., Boston, MA 02111 on** behalf of itself and its Affiliates and **Morisky Medication Adherence Research, LLC. dba adherence.** ("**Licensor**") with an office at **100 Oceangate 12th Floor, Long Beach CA 90802**.

1. **Definitions**

"**MMAS-4**" means (i) the 4-item Morisky Medication Adherence Scale validated in:

> **Morisky DE**, Green LW, Levine DM. Concurrent and Predictive Validity of a Self-Reported Measure of Medication Adherence and Long-Term Predictive Validity of Blood Pressure Control. Medical Care 1986.

> **Morisky DE**, DiMatteo MR. Improving the measurement of self-reported medication nonadherence: Final response. J Clin Epidemio 2011; 64(3):262-263.

**Copyright: U.S. Reg. No. TX-8-285-390** (ii) derivatives of that Scale; and (iii) all coding and scoring criteria in connection with the foregoing (the "**Coding and Scoring Criteria**").

   a. "**Affiliate(s)**" means a person or an entity that controls, or is by, or is under common control with the subject person or entity. For purposes of this definition, the term "**control**" means the direct or indirect beneficial ownership of at least fifty percent (50%) of the voting interests (stock, membership interest, partnership interest, etc.) of, or at least fifty percent (50%) interest in the income of, such company or other business entity.
   b. "**Licensee**" means **Tufts Medicine Department of Obstetrics and Gynecology** and its Affiliates.
   c. "**Assessments**" means each questionnaire administered to a given patient population.
   d. "**Full Study Title**" means "Continuous Glucose Monitoring in Myo-inositol Supplemented Obese Pregnant Individuals: a Feasibility Pilot Randomized Control Trial."
   e. "**Total # of patients screened**" means 40
   f. "**Total # of patients enrolled**" means 40
   g. "**Number of Administrations**" means 3 times each

2. **Description of Services**
   a. <u>License for MMAS-4</u>.  Licensor will provide Licensee with 1) authority and permission to use the MMAS-4 surveys for Licensee business use, including but not limited to mobile applications, web applications, clinical studies, and scientific research, and 2) access and authorization to use the scoring algorithm provided to Licensee through various means, including but not limited to API integration, CSV file with integrated scoring algorithm, and scoring on Licensor's platform. Under this license, at Licensee's discretion, Licensee's Partners may 1) use the MMAS-4 surveys for Licensee business use, including but not limited to mobile applications, web applications, clinical studies, and scientific research, and 2) access and use the scoring algorithm provided to Licensee through various means, including but not limited to API integration, CSV file with integrated scoring algorithm, and scoring on Licensor's platform.

3. **Ownership**
   Licensee acknowledges and agrees that the MMAS-4© Diagnostic Assessments are the



exclusive property of the Licensor and cannot be used, transferred, divulged, distributed, published, or otherwise exploited without the written permission of Licensor outside the scope of this License Agreement. Licensee fully understands and agrees pursuant to this License Agreement, the MMAS-4© can only be used by agents, employees or researchers of Licensee, or Licensee's Partners.

Data obtained by Licensee or Licensee's Partners can be leveraged at the discretion of the Licensee or Licensee's partners, e.g. for providing personalized interventions and publishing research.

4. **Fees and Payment Terms**
   Licensee will have access to the following rate provided by the Licensor:

   - $500 (Includes validated translations of Spanish and Haitian Creole versions of the MMAS-4

   TOTAL DUE: **$500 USD**

   All fees are in US Dollars and exclusive of VAT. Any foreign tax will be added to the cost of the license.

5. **Confidentiality**
   a. A party will keep all non-public or proprietary information of the other party and their Affiliates disclosed in connection with this License Agreement, this License Agreement itself and its existence (collectively, "**Confidential Information**"), confidential and secure at all times.
   b. The receiving party will only use or disclose the Confidential Information of the other party for the purpose of this License Agreement, as required by law, regulation, or as otherwise agreed by the other party in writing.
   c. A party may share the Confidential Information on a need-to-know basis with its personnel, agents, advisors or partners provided that such individuals have written confidentiality obligations at least as stringent as the terms of this License Agreement.
   d. The confidentiality obligations in this License Agreement continue for 5 years following the expiry or termination of this License Agreement.
   e. A party acknowledges that the Confidential Information of the other party is proprietary to such party and nothing in this License Agreement grants to a party any right to the Confidential Information of the other party.
   f. A party will indemnify the other party from and against any liability, damages, costs, expenses, or claims arising from any breach of this clause by itself or personnel of the breaching party.

6. **Data Privacy**
   a. The parties acknowledge that the Services will not require the Processing of Personal Data under applicable Data Protection Laws.

b. Licensor shall seek prior approval from Licensee to Process any Personal Data on behalf of a Licensee Partner. The licensor shall also, where required by applicable Data Protection Laws, enter into an appropriate data processing agreement with Licensee Partner.

c. To the extent that Licensor will share anonymized Personal Data with Licensee, Licensor shall (i) ensure the Personal Data has been anonymized according to adequate anonymization standards and techniques to prevent re-identification of Personal Data and provide adequate details of the anonymization process to Licensee whenever requested; and (ii) ensure that no Personal Data will be transferred to Licensee by ensuring adequate training of its employees and implementing appropriate IT controls.

d. To the extent that Personal Data may be shared between the parties in the context of the License Agreement, the parties undertake to comply with applicable Data Protection Laws. The parties agree and undertake that such Personal Data will only be Processed as far as is necessary and in order to fulfil the obligations as set out in the License Agreement.

e. For the purpose of this Clause, the expressions "Data Protection Laws" shall mean any laws regulations and orders of any jurisdiction relating to the privacy, security, confidentiality and/or integrity of Personal Data that are applicable to the Processing of Personal Data under the License Agreement, including but not limited to the EU General Data Protection Regulation (2016/679); "Process, Processed, Processing", "Personal Data" and "Sensitive Personal Data" shall have the meaning given to them in the applicable Data Protection Laws. Except as stated otherwise, definitions above apply to all data privacy related provisions in the License Agreement or documents attached to the License Agreement.

a. <u>Trademarks</u>.  Licensee acknowledges and agrees that Licensor is granting Licensee limited permission to use the Morisky name, brand, and trademarks including: Morisky Platform™, MMAS™, Morisky Medication Adherence Scale™ and translations of the MMAS™ trademark ("**Licensor's Trademarks**"). This limited permission does not grant Licensee the right to transfer use of the Licensor's Trademarks or grant Licensee any use of the Licensor's Trademarks beyond the rights authorized and/or contemplated by this License Agreement.

b. <u>Guidelines</u>.  Licensee acknowledges and agrees to adhere to all the terms and requirements of the License Agreement including the copyright and trademark guidelines in Appendix 2 for the publications and poster presentation. Licensee further acknowledges and agrees that the guidelines provided in Appendix 2 must be included in all publications including manuscripts, research findings, journal articles, web postings, or other publications containing Morisky Platform and MMAS™ results.

c. <u>Reservation of Rights to Inspect</u>.  The MMAS™ Assessments data and results generated by Licensee is the exclusive property of Licensee. Licensor reserves the right to inspect all deidentified MMAS™ Assessments data and results only in cases of administrative or scientific misconduct.



    h.    <u>Jurisdiction and Choice of Law</u>.  This License Agreement and matters connected with the performance thereof shall be construed, interpreted, applied, and governed in all respects in accordance with the laws of Nevada, without reference to conflict of laws principles. The parties agree: (a) that all disputes and litigation regarding this License Agreement, its construction and matters connected with its performance shall be subject to the exclusive jurisdiction of the competent courts of Las Vegas, Nevada (the "**Court**"), and (b) to submit any disputes, matters of interpretation, or enforcement actions arising with respect to the subject matter of this License Agreement exclusively to the Court. The Parties hereby waive any challenge to the jurisdiction or venue of the Court over these matters.

    i.    <u>Counterparts</u>.  This License Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together form but one and the same instrument.

**Authorization:** each individual signing this License Agreement represents and warrants that he/she has full authority and is duly authorized and empowered to execute this License Agreement on behalf of the Party and/or others for which he/she signs.

X _/s/ Donald E Morisky_____

Donald Morisky, ScM, MSPH, ScD
President, Morisky Medication Adherence Research dba adherence.
**Date:** 18-Dec-2024

X _/s/_____

Philip Morisky, MBA
Chief Executive Officer, Morisky Medication Adherence Research dba adherence.
**Date:** 18-Dec-2024

X _/s/_____

Name:  Michael House, MD
Position:  Principal Investigator
Date: 12/18/24

# contract agreement MMAS4- Tufts CGM in Myo-inositol FINAL MHouse signed

Final Audit Report            2024-12-18

| | |
|---|---|
| Created: | 2024-12-18 |
| By: | Philip Morisky (philm715@icloud.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAhYFV_tfLCsZg-k0dBDBREgJOp4WNxcv8 |

## "contract agreement MMAS4- Tufts CGM in Myo-inositol FINAL MHouse signed" History

- Document created by Philip Morisky (philm715@icloud.com)
  2024-12-18 - 8:56:47 PM GMT- IP address: 66.214.146.130

- Document emailed to Philip Morisky (philip.morisky@adherence.cc) for signature
  2024-12-18 - 8:56:52 PM GMT

- Email viewed by Philip Morisky (philip.morisky@adherence.cc)
  2024-12-18 - 8:57:00 PM GMT- IP address: 66.214.146.130

- Document e-signed by Philip Morisky (philip.morisky@adherence.cc)
  Signature Date: 2024-12-18 - 8:57:32 PM GMT - Time Source: server- IP address: 66.214.146.130

- Agreement completed.
  2024-12-18 - 8:57:32 PM GMT



Adobe Acrobat Sign